**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Larry Dwain Clark, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| | ) | |
| County of McLean in the State of | ) | |
| North Dakota; Don Charging, | ) | |
| Sheriff; Dave Peterson, Chief | ) | |
| Deputy; Sharon Fox, court reporter; | ) | Case No.  1:08-cv-075 |
| Department of Corrections of | ) | |
| North Dakota, | ) | |
| | ) | |
| Defendants. | ) | |

The plaintiff, Larry Dwain Clark ("Clark"), was formerly incarcerated at the North Dakota

State Penitentiary and Missouri River Correctional Center.  He initiated the above-entitled action

pursuant to 42 U.S.C. § 1983.  What follows is pre-service review of his complaint pursuant to 28

U.S.C. § 1915(e)(2).

**I.      BACKGROUND**

Clark was convicted in May 2003 on state charges of aggravated assault (Count I) and

reckless endangerment (Count II).  The North Dakota Supreme Court summarized the events

culminating in his conviction in State v. Clark, 2004 ND 85, 678 N.W.2d 765.

[¶2]   Clark was charged with reckless endangerment under N.D.C.C. §
12.1-17-03 for willfully creating a substantial risk of serious bodily injury or death
to his daughter by stopping a motorcycle on which she was a passenger in front of
a moving semi-truck driven by Jeff Gerou and with aggravated assault under
N.D.C.C. § 12.1-17-02(1) for willfully causing serious bodily injury to Gerou.

[¶3]   According to Clark, he was driving his motorcycle about 50-55 mph
with his ten-year-old daughter as a passenger on a county road in McLean County

1

and Gerou was hauling gravel in his semi-truck from a gravel pit near Riverdale, when Gerou turned onto the county road right in front of Clark. According to Clark, he took evasive action through a ditch, pulled up past Gerou's truck, parked his motorcycle on the side of the road, and walked to the middle of the road to stop Gerou. According to Clark, he

started running back to [Gerou's truck] and I was screaming some profanity, that he damn near killed us and run us off the road. And he was sitting up in his truck, had his window down and, you know, I said, "You damn near killed us," I said, "you run us off the road." [He said,] "I didn't see you." I said, "That's the problem, you guys aren't looking, you're not even looking and," I said, "this is the third time in less than two weeks I've been chased in the ditch here and," I says, "the only difference is this time I've got my daughter with me." And he looked out the window and he had this spacey, big dilated eyes and he went, "So what," he went. I said, "Get out of the truck, let's talk about this." And he said, "No, I'm not getting out." So I said, "I'm coming up there," and I grabbed the handrail and I started up; and he swung the door at me and I swung around and I just about got my arms on the stacks, got my balance and I got back. I was going to pull myself up and he kept slamming the door trying to knock me off. . . . He kept trying to knock me off with the door and I was hanging on here (indicating) and finally I got my hand on the door and held it open like this (indicating) and I started to pull myself up, you know, up closer to his height. . . . As I was coming up, he had his seat belt on, he turned, he went to throw a punch at me, kind of down; and I just held on with this here one so I threw a left as he was coming around and kind of had my head down a little bit 'cause like I said I was a little bit below him and I seen his arm starting to come and I hit him; and his head snapped around and he looked back and he goes, "You crazy bastard." And I told him, I said, "No, you're the crazy bastard." . . . I pulled myself up even with him, I grabbed on to the A post and he looked at me and he went -- he just hyperventilated and he started to throw a punch again and I was standing there, I was hanging on with my left hand then I just hit him in the jaw. He just kept shaking his head and hyperventilating and he tried it probably three times. The last time I seen blood coming out of his nose and down his mustache and he tried one more hit and I hit him and then he turned around and he goes, "Okay, okay, I'm sorry," he said, "I'm sorry." I said, "It's kind of late for that now." . . . I got down off the truck. You know, I got down, I turned around, looked back at him and he picked his cell phone up off his console kind of over here

2

> (indicating) and he was dialing on it and I just walked away and got
> on the motorcycle and left.
>
> [¶4]  According to Gerou, he saw a motorcycle about one-half or one-quarter
> mile down the road when he turned onto the county road, and he
>
> > rounded the corner, started shifting gears and watched the motorcycle
> > in my mirror as I rounded the corner and once I got going above 20,
> > 25 miles an hour, I couldn't see behind me because of the dust. . . . I
> > no more than drove a couple of minutes and a motorcycle came out
> > of the dust beside me waving his arms and pointing for me to pull
> > over so I start to stop. The motorcycle pulled in front of me, . . . I
> > couldn't see his motorcycle in front of my truck. I couldn't see him
> > over the hood of my truck. . . . Oh, I locked up the tires, I had to or I
> > would have run him over. I mean, he cut in front of me, was waving
> > his arms and turned in front of me and was pointing to pull over and
> > I had no choice. . . . I was reaching to set brakes and I saw his helmet
> > round the corner of my truck and I went to open my door to him
> > figuring he was going to tell me my gates were open or I had a flat
> > tire, something of that nature, so I opened my door to him. I turned
> > my head to set my brakes and the next thing I knew I got hit in the
> > head. I turned to look at him and met his hand hitting my face, after
> > that [the n]ext thing I remember is another driver at my door wiping
> > my face with a wet rag.
>
> A jury found Clark guilty of aggravated assault and reckless endangerment.

State v. Clark, 2004 ND 85 at  ¶¶ 2-4.

Clark  was sentenced to three years imprisonment with two years suspended on Count I and one year imprisonment on Count II.  His conviction and sentences were upheld on direct appeal. It appears that Clark has now served his sentences and has been released from custody.

Clark filed his complaint on August 25, 2008, along with a request to proceed *in forma pauperis*.  After reviewing supplemental financial information provided by Clark pursuant to the court's order, the request to proceed *in forma pauperis* has now been granted by separate order and this matter is before the undersigned for pre-service screening.

In his *pro se* complaint, Clark claims that he was deprived of adequate medical care, that his medical complaints were treated with indifference, and that he was subjected to cruel and unusual punishment while in State custody.  Additionally, he asserts that McLean County officials failed to protect his family, refused to investigate his reports of criminal activity, withheld exculpatory evidence during his criminal proceedings, and conspired to deprive him of his due process rights. Finally, he asserts that court reporters altered or otherwise falsified the record of his criminal proceedings as well as the record of civil proceedings initiated against him by Jeff Gerou, the individual he had been charged with assaulting.[1]  He requests a total of $68.5 million in damages as well as the criminal prosecution of the Defendants.

## II.     STANDARD OF REVIEW

Proceedings *in forma pauperis* are governed by 28 U.S.C. § 1915, which provides that the court may authorize the commencement of a suit without prepayment of fees by a person submitting a financial affidavit evincing an inability to pay.  See 28 U.S.C. § 1915(a)(1).  Notwithstanding financial eligibility, the court may dismiss a case at any time if it concludes the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2).

In applying the provisions of § 1915(e)(2), the court must give the *pro se* complaint the benefit of a liberal construction  and not dismiss the complaint unless it is clear beyond doubt that there is no set of facts that would entitle the plaintiff to relief.  See Haines v. Kerner, 404 U.S. 519, 520 (1972) (*pro se* complaints are "subject to less stringent standards than formal pleadings drafted by

---

[1]  A cursory of the district court's docket (which the North Dakota Supreme Court has made available to the public through its website) indicates that Gerou filed a personal injury action against Clark in state district court on June 2, 2003, prevailed at trial and was awarded $784,000 in damages by the jury along with $2,962.49 in costs by the court.

lawyers"); <u>Atkinson v. Bohn</u>, 91 F.3d 1127, 1128-29 (8th Cir. 1996).  In construing the complaint, the court must weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 31-33 (1992) (court may disregard factual allegations that are clearly baseless, fanciful, fantastic, or delusional); <u>Martinez v. Turner</u>, 977 F.2d 421, 423 (8th Cir. 1992) (citing <u>Nietske v. Williams</u>, 490 U.S. 319, 325 (1989), for the proposition that a complaint is frivolous if it lacks an arguable basis in fact or is based on an indisputable meritless legal theory).  Although the court is obligated to construe pro se complaints liberally, it is not required to ignore facts pled by the plaintiff that undermine the plaintiff's claims.  The court may accept as true all facts pled in the complaint and conclude from them that there is no claim stated as a matter of law.  <u>E.g.</u>, <u>Edwards v. Snyder</u>, 478 F.3d at 830; <u>Thompson v. Illinois Department of Professional Regulation</u>, 300 F.3d 750, 753-754 (7th Cir. 2002) (citing other cases).[2]

## III.    DISCUSSION

### A.    Statement of Claim under § 1983

Title 42 of the United States Code, section 1983 allows an individual to bring suit against persons who, under color of state law, have caused him to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the

---

[2]  In <u>Edwards v. Snyder</u>, the Seventh Circuit stated the following:

Complaints may be susceptible to dismissal for failure to state a claim for various reasons. For example, a plaintiff may allege too little in his complaint and fail to meet the minimal federal pleading requirements. <u>See</u> Fed. R. Civ. P. 8. Even if a complaint passes the minimal threshold of pleading standards, dismissal for failure to state a claim may be appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." <u>Marshall v. Knight</u>, 445 F.3d 965, 968 (7th Cir.2006); <u>Dealt v. Carter</u>, 224 F.3d 607, 610 n. 1 (7th Cir.2000). A complaint can also allege too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery.  <u>See</u> <u>McCreary v. BAY, Inc.</u>, 453 F.3d 882, 888 (7th Cir. 2006).

478 F3d at 830.

deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir.1993) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).  In order to state a claim pursuant to 42 U.S.C.§ 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

### B.    Claims Regarding Treatment While Incarcerated

#### 1.    Deliberate Indifference/Denial of Medical Treatment

According to Clark, he dislocated his L3 and L5 vertebrae shortly after arriving at the North Dakota State Penitentiary ("NDSP") to begin service on his sentence.  Penitentiary staff largely ignored his pain complaints as well as his repeated requests to see a chiropractor.  Later, as his complaints persisted, they gave him muscle relaxers and arranged for him to meet with a physical therapist.  His condition nevertheless continued to deteriorate and his leg began to atrophy.  He was given a wheelchair.  He eventually underwent an MRI followed by back surgery.  He has since suffered leg and back problems that he attributes to the deliberate indifference of penitentiary staff and/or the denial of timely treatment.

The Eighth Amendment requires that the Government "provide medical care for those whom it is punishing by incarceration."  Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002).  In Jolly v. Knudsen, the Eighth Circuit described the extent of this constitutionally imposed duty and what is required to prove a breach:

> Prison officials or their agents violate the eighth amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Our court has interpreted this standard as including both an objective and a subjective component: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials

actually knew of but deliberately disregarded those needs." <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1239 (8th Cir.1997). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." <u>Estate of Rosenberg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir.1995).

<u>Jolley v Knudsen</u>, 205 F.3d 1094, 1096 (8th Cir. 2000); <u>see also</u> <u>Phillips v. Jasper County Jail</u>, 437 F.3d 791, 795 (8th Cir. 2006);   <u>Warren v. Fanning</u>, 950 F.2d 1370, 1373 (8th Cir. 1991) ("Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment . . . but a "mere disagreement with the course of [the inmate's] medical treatment [does not constitute] an eighth amendment claim of deliberate indifference.")

In light of these substantive requirements, Clark must allege that he or she suffered an actual or imminent injury that is sufficiently serious to give rise to an Eighth Amendment violation in order to state a cognizable claim.  <u>Smith v. Arkansas Dep't. of Corrections</u>, 103 F.3d 637, 643 (8th Cir. 1996) (citing <u>Lewis v. Casey</u>, 518 U.S. 343 (1996)); <u>see also</u> <u>Maurice B. Madison-Bey v. Correctional Medical Services</u>, 180 Fed. Appx. 608, 2006 WL 1278690 (8th Cir. 2006) (unpublished *per curiam* decision upholding the dismissal of a § 1983 claim for failure on the part of the plaintiff to allege that he had suffered harm as a result of an unconstitutional policy or custom).  "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should be measured by reference to the *effect* of delay in treatment."  <u>Laughlin v. Schriro</u>, 430 F.3d 927, 929 (8th Cir. 2005).

This is not a case where Clark was denied any treatment.  According to the complaint, Clark was given medication, underwent an MRI, had back surgery, and received physical therapy.  Thus,

the issue is whether the alleged delays in affording proper treatment arise to the level of an Eighth Amendment violation.

A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Johnson v. Busby, 953 F.2d 349, 351 (8th Cir.1991); Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir.1980), cert. denied, 450 U.S. 1041 (1981). Federal courts have frequently found that medical needs of inmates who require surgery constitute serious medical needs and when combined with deliberate indifference shown by prison officials constitute an Eighth Amendment violation. See e.g., Johnson v. Lockhart, 941 F.2d 705 (8th Cir.1991) (inguinal hernia); Warren v. Fanning, 950 F.2d 1370 (8th Cir.1991), cert. denied, 506 U.S. 836 (1992) (toenails which had become infected and had turned black); Dace v. Solem, 858 F.2d 385 (8th Cir.1988) (painful nasal condition); Toombs v. Bell, 798 F.2d 297 (8th Cir.1986) (painful gallstones); Mandel v. Doe, 888 F.2d 783 (11th Cir.1989) (fracture in the hip joint which required surgery). Some have also recognized that prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain. See e.g., McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999).

The facts as alleged suggest that Clark suffered from discomfort that was significant enough to warrant the use of medication, that his complaints were ultimately deemed credible enough to schedule him for an MRI, and that his condition ultimately proved to be serious enough to warrant back surgery. Thus, giving Clark the benefit of all doubt, construing his complaint liberally, and assuming that the facts as alleged in the complaint are accurate, it appears that he has articulated a cognizable Eighth Amendment claim. Whether it has any merit remains to be seen.

While Clark has stated a cognizable Eighth Amendment claim, there are problems with the parties that he has identified that prevent the claim from going forward at this time. This point will be addressed separately below.

### 2.      Prison Work Requirements

Clark next takes issue with the fact that he was ordered to dig a trench to a depth of twenty-four inches while incarcerated at the Missouri River Correctional Center ("MRCC"). He failed to complete this task to the satisfaction of the Center's staff. Following what he describes as a callous exchange of words with staff, he "was immediately placed in the hole for [his] last 7 days of prison." (Docket No. 3-2). He now contends that the directive to dig the trench constituted cruel and unusual punishment in light of his back condition and given the fact that there were other inmates on hand capable of performing this task. In so doing he maintains that he aggravated his condition while digging the trench, making it difficulty to get out of bed on his own and leaving him with major back and leg problems.

"For prison officials knowingly to compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or heath, or which is unduly painful constitutes an infliction of cruel and unusual punishment prohibited by the Eight[h] Amendment to the Constituted of the United States as included in the 14th Amendment." Ray v. Mabry, 556 F.2d 881, 882 (8th Cir. 1977). Construing the complaint liberally and assuming the facts pled to be true, Clark has stated a cognizable § 1983 claim of cruel and unusual punishment in violation of the Eighth Amendment.

Again, whether the claim has merit remains to be seen. Also, this claim suffers from the same problems with respect to the named parties, which will be addressed next.

###### 3.    Problems with the named parties

With respect to the claims relating to his incarceration, Clark names the North Dakota Department of Corrections and Rehabilitation (NDDOCR) as a defendant in the caption of the complaint.  In the space provided for "additional defendants" in body of the complaint, he also names: Warden Tim Schuetzle (misspelled Shutzle); Kathy Bachmeier (misspelled Bachmeire), the head of the medical department for the NDDOCR; and Bruce Meiers, the head of maintenance at the MRCC.   In the prayer for relief, Clark asks for relief against Dr. Abel and former NDDOCR director Elaine Little, but has not identified either as a defendant either in the caption or in the section of the complaint listing the "additional defendants" and there is a substantial question whether they have properly been named as defendants.

In addition to the confusion over who are the properly named defendants, there are two other problems with the named defendants with respect to Clark's § 1983 Eighth Amendment claims.  The first has to do with the sovereign immunity of the State of North Dakota and the fact that the NDDOCR is a state entity.

It is well established that states have Eleventh Amendment immunity from a suit brought under 42 U.S.C. § 1983.  Monroe v. Arkansas State University, 495 F.3d 591, 594  (8th Cir. 2007); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999).  This immunity also extends to state agencies and institutions.  Id.  In addition, states and their agencies are not "persons" within the meaning of § 1983 and are not proper parties for this reason as well.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 & 70 (1989); Alsbrook v. City of Maumelle, 184 F.3d at 1010.

10

In this case, Clark seeks only monetary relief against the NDDOCR. Since the NDDOCR is an immune party, Clark's claim against the NDDOCR should be dismissed without prejudice.

The second problem with the named defendants relates to the fact that Clark's complaint is silent in terms of whether he is suing the individually named defendants in their official or their individual capacities. The Eighth Circuit has instructed that when a complaint is silent in this regard, it is presumed that the suit is against the person only in his or her official capacity. E.g., Baker v. Chisom, 501 F.3d 920, 924 (8th Cir. 2007); Johnson v. Outboard Marine Corporation, 172 F.3d 531, 535 (8th Cir. 1999). And, the problem for Clark in applying this presumption is that a suit against a state employee in his or her official capacity is the same as suing the State, which has immunity under from suit under the Eleventh Amendment for any claims for damages in an action brought pursuant to 42 U.S.C. § 1983 as previously discussed. See Quern v. Jordan, 440 U.S. 332 (1979); Edelman v. Jordan, 415 U.S. 651 (1974); Alsbrook v. City of Maumelle, 184 F.3d at 1010; see also Kentucky v. Graham, 473 U.S. 159, 166-167 (1985) (discussing distinctions between individual and official capacity claims).

Consequently, the complaint must be dismissed as to the individually named defendants who are state employees unless Clark cures this deficiency by filing an amended complaint that makes clear that the defendants who are state employees are being sued in their individual capacities. Preferably, this should be indicated in the caption if not also in the body of the complaint.

**C.      Claims arising out of underlying criminal proceedings**

**1.      Perjury**

Clark claims that McLean County Sheriff's Deputy Dave Peterson lied under oath at Clark's trial. It is well established, however, that a police officer, like any other witness, has absolute

immunity from suit under § 1983 for giving false testimony at a criminal trial.  See Briscoe v. LaHue, 460 U.S. 325 (1983).  In other words, an inmate cannot sue an officer for damages on the grounds that the officer gave perjured testimony.  See id.  (observing that "[t]his category or § 1983 litigation might well impose significant burdens on the judicial system and on law-enforcement resources").  Clark's perjury claim against Deputy Peterson is therefore subject to dismissal pursuant to 28 U.S.C. §  1915(e)(2).

### 2.   Failure to Disclose Exculpatory Evidence

Clark contends that McLean County officials conspired to deny him due process to the extent that law enforcement  failed to document and the McLean County States Attorney failed to disclose what he characterizes as exculpatory evidence.

> The Deputy for McLean County, Dave Peterson, spoke to a witness who would substantiate my account of the event that day and never made not of such information in any reports.  The County States Attorney Ladd Erickson and the Sheriff Don Charging, or another Deputy, spoke with the same witness at a later date and [were] told the same information, supporting my account of the events and which refuted the alleged victims account.   Once again the information was never documented.

***

> I have since found out that Deputy Peterson interviewed Gravel Pit manager Kim Ekre, who told Peterson that he seen Gerou's truck sitting at the intersection, that he heard his friend following behind him, speaking with Gerou, that Gerou told his friend he had gotten in a fight.  Ekre got on the CB and asked Gerou if he needed an ambulance, to which he said no and that he was ok, and then Ekre asked him if he wanted the cops call, to which he said "no don't do that, I going to finish my load."  Ekre told me that later States Attorney Ladd Erickson and either Sheriff Don Charging or an other deputy came and interviewed him about what he had seen and heard, to which he told them the same thing.  What Kim Ekre said would have proven my verson (sic) of the events that day and were never recorded and put in a report because it would have proven my verson (sic) correct and exposed some of the lies that were told.

* * *

12

> I believe my right to a fair trial was infringed upon by the county employees not recording all the information they gathered. The county commission and the sheriff, deputy, and states attorney conspired to deprive me of due process.

(Docket No. 3-2).

In Heck v. Humphrey, the United States Supreme Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486-87 (1994). In explaining its holding, the court noted that, "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." Id. at 489.

In this case, while it appears Clark has been released from custody, it is not clear whether there are any remaining restraints being placed upon him by his criminal judgment that would entitle him to habeas relief. But, assuming there is not, there is a split in the federal circuit courts in terms of whether the bar imposed by Heck's "favorable termination rule" applies when a person is not in custody and habeas relief is no longer available. E.g., Wilson v. Johnson, 535 F.3d 262 ,264-268 (6th Cir. 2008) (discussing the most recent cases); Entzi v. Redmann, 485 F.3d 998, 1003 (8th Cir.

2007).  And, the Eighth Circuit has taken the position that it continues to apply.  Id.[3]  Consequently,

this claim is Heck-barred and should be dismissed without prejudice for failure to state a claim.[4]

### D.     Claims against the court reporters and Morton County

Clark next seeks to recover damages from court reporters Sharon Fox and Joyce Harnden

(misspelled "Harden"), along with Morton County.  The claim against Fox is that she deliberately

altered a transcript in his criminal proceeding and the claim against Harnden is that she did the same

thing, but for a transcript in a civil action that was brought against him by the victim of the assault

that was the subject of the criminal proceeding.   Specifically, Clark contends:

> There was a damaging exchange of discussion between myself, the judge, and States
> Attorney Merl (sic) Torkelson in my preliminary trial, where Ms. Torkelson admitted
> to charging me with crimes in the past, that I did not do, for the sole purpose of
> ruining my reputation and to make me spend money.  This whole conversation was
> overheard by deputy Larry Hubbard.  It has since been removed from the court

---

[3]  In Spencer v. Kemna, 523 U.S. 1 (1998), a combination of five concurring and dissenting Justices agreed in
dicta that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of
a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be
impossible as a matter of law for him to satisfy." Id. at 21 (Souter, J., concurring); id. at 25 n. 8 (Stevens, J., dissenting).
 In Entzi, the Eighth Circuit noted the dicta in Spencer, but concluded it would continue to apply the Heck bar absent
the Supreme Court deciding definitively that it does not apply when is person is no longer in custody and cannot bring
a habeas petition. 485 F.3d at 1003.

[4]  The constitutional due process right that Clark presumably relies upon with respect to this claim is explained
in Brady v. Maryland: "the suppression by the prosecution of evidence favorable to an accused upon request violates
due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith
of prosecution." 373 U.S. 83, 87 (1963). This right applies to prosecutors and imposes upon them an absolute disclosure
duty.  See White v. McKinley, 519 F.3d 806, 813 (2008). Brady's protections "also extend to actions of other law
enforcement officers such as investigating officers." Id.  "However, an investigating officer's failure to preserve evidence
potentially useful to the accused or their failure to disclose such evidence does not constitute a denial of due process in
the absence of bad faith." Id.  (adding that "[t]he recovery of § 1983 damages requires proof that a law enforcement
officer other than the prosecutor intended to deprive the defendant of a fair trial"). Consequently, to assert a viable Brady
claim in the context of a § 1983 action, Clark must allege bad faith.  Further, to sustain his claim of  conspiracy to
deprive him of his due process right, Clark must show: (1) that the defendants conspired to deprive him of constitutional
rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and
(3) that he was injured by the overt act.  See White v. McKinley, 519 F.3d at 814.
    In terms of Clark's complaint, there are also questions as to whether he has pled a cognizable claim apart from
the Heck bar. In particular, Clark has not attributed the failure to document and disclose witness statements to bad faith
on the part of law enforcement or the prosecution.  And, with respect to the claim of conspiracy, he has not pled facts
that would show the involvement of those persons he alleges were involved, apart from possibly Deputy Peterson, and
it is questionable whether he has sufficiently alleged any overt act in furtherance of a conspiracy.

record.  I showed it to Larry Hubbard and Sheriff Don Charging and the[y] admitted it was missing.  Sheriff Charging has promised to bring the BCI in on my case but has not done it.  Court reporter Sharon Fox is the person tampering with the court record.

* * *

During my pretrial hearing for the civil suit there was a discussion about Mr. Gerou's prison record, drug treatments, drug use, and being under the influence of drugs the day of the incident.  There was a conversation about stolen property that Mr. Weikum had in his possession.  The court record has had all of the aforementioned removed from the transcript I received.  My wife tried for 3 months to get a copy of the transcript, then my attorney tried for 1 1/2 months before we received it.  I believe that Judge Donald Jorgenson had the record changed, and the change was made by Joyce O.  Harden, which was [the] Morton County Court Reporter.

(Docket No.  3-2).

A court reporter may be considered a "state actor" and therefore may be amenable to suit under § 1983.  See Curry v.  Watkins, No. No. 3:08-2644, 2008 WL 4442598 at *3 (D.S.C. Sept. 25, 2008) (citing Antoine v. Byers & Anderson, 508 U.S. 429, 437 (1993) for the proposition that court reports are not absolutely immune from suit).  "Some courts have recognized § 1983 claims based on the deliberate actions of court reporters."  Id.  (citing McCullough v. Horton, 69 F.3d 918, 919 (8th Cir. 1995.  Innocent errors, even if negligent  do not subject court reporters to liability under § 1983, however.  See Daniel v.  Williams, 474 U.S. 327, 330 (1986) (opining that § 1983 claims cannot be founded on negligence).

The court reporters named here are both state employees.  As a consequence, the complaint suffers from the same deficiency noted above in terms of the failure to state whether or not the two defendants are being sued in their individual capacities.  More fundamentally, however, Clark has not alleged with respect to either court reporter a violation of federal statutory or constitutional rights much less sufficient facts that would give rise to a cognizable claim under federal law or the

United States Constitution.[5]  Consequently, unless these deficiencies are cured, the claims against

defendants Fox and Harnden should be dismissed without prejudice.

Finally, Clark has named Morton County as a defendant and apparently this is because he

believes that defendant Harnden is a county employee.  However, she is a court reporter for the state

district court sitting in Morton County and is state employee.  As a consequence, Clark has no claim

against Morton County as a matter of law for any of her actions.

### D.      Failure to Investigate

Clark takes issue with what he perceives as the failure of McLean County officials to

investigate his complaints.  Specifically, he contends:

> McLean County has refused to protect my family and myself.  We have had paper
> work stole out of our house, a car stolen, propane tanks, fishing rods stolen,
> vandalism done, and they refuse to do any thing.  My wife and I had over 2 thousand
> dollars scammed from us through a bank wire transfer and they won't do anything
> to help recover it.  They had been warned about this dangerous intersection by

---

[5]  Notably, Clark has not claimed that the alleged falsification of the transcripts adversely affected the outcome of his either his criminal or civil proceedings.  Further, it is doubtful whether such a claim could be made.
As noted by the Third Circuit with respect to claim of falsifications in a criminal transcript:

> Analysis properly begins with the observation that plaintiff does not have a constitutional right to a totally accurate transcript of his criminal trial. His constitutional rights would be violated only if inaccuracies in the transcript adversely affected the outcome of the criminal proceeding. And, since the jury which convicted plaintiff and sentenced him to death acted on the basis of the evidence they saw and heard, rather than on the basis of the written transcript of the trial-which was, of course, non-existent until after the trial was completed-this means that a constitutional violation would occur only if the inaccuracies in the transcript adversely affected appellate review in the state courts. The threshold question, therefore, is one which was not directly addressed in the district court, namely, whether plaintiff has alleged deficiencies in the trial transcript substantial enough to call into question the validity of the appellate process in the state courts.

Tedford v. Hepting, 990 F.2d 745, 747 (3rd Cir.1993).  In terms of this case, Clark appealed his criminal judgment, and it does not appear that he made any claim of falsification of transcripts  as part of his appeal.  See State v. Clark, 2004 ND 85, 678 N.W.2d 765.  Also, it is difficult to see how Clark would have any § 1983 claim for falsification of his criminal case transcripts  unless he was able to set aside his state court conviction and, if he asks for this relief, then the Heck bar would clearly apply.  Tedford, 990 F.2d at 748-750.
As for the alleged falsification of the pre-trial transcript in the civil proceedings, the same reasoning applies.  Cf. Colyer v. Ryles, 827 F.2d 315, 316 (8th Cir.1987) (civil complaint for damages frivolous where plaintiff was not prejudiced by allegedly altered transcript).  And, it appears from the docket sheet in his civil case  that he did not appeal the jury's verdict and that the time for appeal has long run.  Gerou v. Clark, Civil No. 28-3C-57-1 (N.D. Dist. Court) (docket sheet accessible electronically via the North Dakota Supreme Court website).

> everyone in the neighborhood and refused to do anything about it.  I went to county
> commission meeting and told them about their deputy lying under oath and the
> deputy, states attorney, and possibly the sheriff, withholding evidence which would
> have proven my innocence!

(Docket No.  3-2)

Private citizens have no constitutional or other right to right to a criminal investigation, however.  Mitchell v. McNeil, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."); Koger v. Florida, 130 Fed.Appx. 327, 335, 2005 WL 1027204, *6 (11th Cir. 2005); cf. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); Dohaish v. Tooley, 670 F.2d 934, 935 (10th Cir. 1982); Fulson v. City of Columbus, 801 F. Supp. 1, 6 (S.D. Ohio 1992) ("Thus, courts have generally declined to recognize standing on the part of victims of crimes to bring a § 1983 action based upon lack of prosecution of others.") Consequently, the failure on the part of McLean County officials to take action on Clark's various complaints does not give rise to a § 1983 claim.  Moreover, Clark cannot compel the criminal prosecution of McLean County officials as requested in his complaint's prayer for relief.

## III.    CONCLUSION

It is hereby **ORDERED** that the Clerk not cause to be served any of the defendants named in this action until further order of the court.

The undersigned **RECOMMENDS** the following pursuant to 28 U.S.C. § 1915(e)(2):

1.    Clark's Eighth Amendment claim for damages against the NDDOC be **DISMISSED** without prejudice on account of the fact it is an immune party and cannot be sued for damages.

2.     Clark's Eighth Amendment claims against defendants Shutzle (correct spelling Schuetzle), Bachmeire (correct spelling Bachmeier), and Bruce Meiers be **DISMISSED** unless within twenty days of the court acting on this report and recommendation  Clark files an amended complaint stating that he is suing these defendants in their individual capacities since otherwise they are immune from suit.

3.     The complaint be deemed **DISMISSED** without prejudice as to any persons not listed as a defendant in either the caption of the present complaint or in the section naming "additional defendants" unless the plaintiff files within 20 days of the court acting on this report and recommendation an amended complaint naming these persons in the caption as defendants, and, if state employees, states that he is suing them in their individual capacities.

4.     Clark's claims against court reporters Sharon Fox, Joyce Harden (correct spelling "Harnden"), be **DISMISSED** unless Clark files an amended complaint within twenty days of the court acting on this report and recommendation stating a cognizable claim against them for a violation of federal statutory or constitutional right and also stating with respect to defendants Fox and Harden that they are being sued in their individual capacities.

5.     Clark's claims against Morton County be **DISMISSED** without prejudice for failure to state a claim.

6.     Clark's claim against defendant Dave Peterson alleging claim based on perjury at trial be **DISMISSED** without prejudice on account of the defendant's immunity.

18

7.      Clark's conspiracy/due process claims against McLean County, the McLean County sheriff Don Charging, and deputy Dave Peterson be **DISMISSED** without prejudice for failure to state a claim on account of the bar imposed by the United States Supreme Court in <u>Heck v. Humphrey</u>; and

5.      Clark's claim against McLean County for failure to investigate be **DISMISSED** without prejudice for failing to state a claim upon which relief can be granted.

## IV.    <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 19th day of November, 2008.


*/s/ Charles S.  Miller, Jr.*
Charles S.  Miller, Jr.
United States Magistrate Judge